# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LAWRENCE KARL WRIGHT,**

    **Plaintiff,**

                                                              **Civil Action 2:19-cv-1124**
    v.                                           **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Lawrence Karl Wright, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. Pending before the Court is Plaintiff's Statement of Errors (ECF No. 24), the Commissioner's Memorandum in Opposition (ECF No. 29), and the administrative record (ECF No. 23). For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision and **OVERRULES** Plaintiff's Statement of Errors.

**I.    BACKGROUND**

Plaintiff protectively filed his application for benefits in March of 2018, alleging that he has been disabled since December 31, 2017, due to disc syndrome with lumbosacral strain, cervical spine strain, extremity carpal tunnel syndrome (both hands), rotator cuff tendonitis (in both shoulders), patellofemoral pain syndrome with osteoarthritis (both knees), and right foot metatersalgia. (R. at 120, 145.) Plaintiff's application was denied initially and upon reconsideration. (R. at 58–71, 72–90.)

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 104–05.) After presiding over a hearing on December 3, 2018, the ALJ issued a decision on December 17, 2018, finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 30–57, 12–29.)  The AJL's determination became the final decision of the Commissioner when the Appeals Council denied review on January 23, 2019.  (R. at 1–6.)

Plaintiff seeks judicial review of that final determination.  He alleges that the ALJ's residual functional capacity ("RFC")[1] determination is not supported by substantial evidence. (ECF No. 24, at PAGE ID # 583.)  Specifically, Plaintiff alleges that the ALJ committed reversible error when determining that he had the functional capacity to frequently handle and finger.  (*Id*.)  The Commissioner asserts the ALJ's determination is substantially supported. (ECF No. 29.)

## II.     RELEVANT RECORD EVIDENCE[2]

### A.     Plaintiff's Testimony

At the December 3, 2018, hearing Plaintiff testified that his biggest problem was his hands which just did not "work like they used to."  (R. at 41.)  Plaintiff explained that his problems with his hands started with tingling that woke him up at night and forced him to sleep with his arm down before his issues worsened and he had to stand up to "shake it out."  (*Id*.)

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite her limitations."  20 C.F.R. § 4040.1545(a)(1) (2012).

[2] Plaintiff's assertions of error pertain only to the ALJ's RFC determination related to his manipulation restrictions and his carpel tunnel syndrome.  Therefore, the Court limits its discussion to the record evidence related to the same.

Plaintiff further testified that he finally had surgery for carpel tunnel syndrome but that as a result of that surgery, he no longer had any strength in his hands which now constantly felt sore and tired, the way his hands might feel at the end of a workout with weights. (*Id.*) He stated, however, that the surgery had relieved his tingling and he now only experienced that "here and there." (R. at 42.) Plaintiff explained that he seldom drove anymore due, in part, to the pain in his hands. (R. at 36.) He also no longer cut the grass or swept because the vibration from the mower and the vacuum hurt his hands. (R. at 46.) Nor did he shovel, carry laundry baskets, or do dishes. (*Id.*) He dropped two to three things a week and had switched to using plasticware so he would not drop glasses. (R. at 48.) Plaintiff testified that he had trouble holding his cell phone to talk and that he no longer sent emails from his computer but instead used his phone so he could type with his thumbs. (R. at 48–49.) Plaintiff stated that he could not lift more than 2 to 3 pounds. (R. at 49.) Plaintiff indicated that his constant throbbing pain was between a 7 and 8 on a 10-point pain scale. (R. at 47.) His pain medications helped him somewhat. (*Id.*) He also indicated that he wore a wrist guard during the day and a hand guard at night. (R. at 48.)

### B. Relevant Medical History and Records

On February 9, 2017, Plaintiff sought treatment from Dr. Edward Lane for moderate numbness, tingling, and loss of sensation in his hands which was aggravated by sleeping, driving, and typing. (R. at 422.) Physical examinations on that day and in March of 2017 revealed that although Plaintiff was positive for a Tinel's Test and Phalen's Maneuver, he had no tenderness, warmth, or objective synovitis in either of his wrists and both of his wrists had good range of motion. (R. at 422, 418, 415.) In addition, upon examination, Plaintiff's hands

3

had no erythema, deformities, tenderness, warmth, trigger finger, or objective synovitis and his fingers had good range of motion. (*Id*.) Plaintiff was referred for EMG testing, instructed to wear a splint, and given carpal tunnel exercises. (R. at 423.)

An EMG and nerve conduction test done on March 24, 2017, indicated that Plaintiff had moderate to severe carpal tunnel syndrome in his left hand and moderate carpal tunnel syndrome in his right hand. (R. at 206.) Plaintiff underwent bilateral carpal tunnel surgery on May 2, 2017. (R. at 323.) At office visits with Dr. Lane after his surgery in May and June of 2017, examinations revealed that Plaintiff had no cyanosis or edema in his extremities. (R. at 411, 409.)

In September of 2017, Plaintiff complained about chronic bilateral wrist pain. (R. at 248, 249, 251, 252.) X-Rays of Plaintiff's hands on September 19, 2017, were "negative". (R. at 248, 249.) The X-rays showed that Plaintiff had no acute displaced fracture, dislocation, or aggressive osseus lesions. (*Id*.) He also had maintained joint spaces; normal mineralization; no osseous erosions; and unremarkable soft tissue. (*Id*.) X-Rays of Plaintiff's wrists that same day also showed that Plaintiff had no acute displaced fracture, dislocation, or aggressive osseus lesions, and that he had maintained joint spaces; normal mineralization; and unremarkable soft tissue. (R. at 251, 252.) The wrist X-Rays also revealed that the lunotriquetral interval was within normal limits. (*Id*.) And although the wrist X-rays showed that Plaintiff had mild ulnar negative variance, there was no findings of significant arthropathy. (*Id*.)

On September 20, 2017, Plaintiff was examined by a physician's assistant ("PA") at the Veteran's Administration ("VA"). (R. at 271.) The records reflect that Plaintiff reported that he

4

had a history of chronic bilateral hand, wrist, and finger pain, and numbness and tingling, and that although he underwent surgery, his symptoms persisted and were made worse with gripping and typing. (R. at 324.) Plaintiff also described his symptoms as "chronic, constant" and he rated them as a 4 on a 10-point scale of severity. (*Id.*) Plaintiff further indicated that he had flare ups and that during those periods, his pain was a 6 on a 10-point scale of severity. (R. at 343.) He also stated that he regularly wore a brace. (R. at 349–50.)

Upon examination that day, Plaintiff was positive for Tinel's sign and Phalen's Maneuver and had moderate incomplete paralysis of the median nerve. (R. at 336–37.) Nevertheless, Plaintiff's wrists had normal range of motion, no pain noted upon exam, no evidence of pain with weight bearing, and no objective evidence of crepitus. (R. at 325–26.) Plaintiff was also able to perform repetitive use tests with at least three repetitions and with no additional functional loss or range of motion loss after those three repetitions. (R. at 326, 347.) Plaintiff's flexion and extension strength in his wrists was a 5/5 and he had no muscle atrophy. (R. at 327–28.) Plaintiff also had no evidence of pain on passive range of motion testing and when his joint was used in non-weight bearing. (R. at 331.) Plaintiff's constant pain that could be attributed to any peripheral nerve conditions was rated mild, and his intermittent pain, paresthesias or dysesthesias, and any numbness due to peripheral nerve conditions was described as moderate. (R. at 334.) Muscle strength testing also revealed that Plaintiff's wrist flexion, grip, and pinch were a 5/5. (R. at 335.) Sensation testing in Plaintiff's hands and fingers was also normal. (R. at 336.) There was no evidence of pain with use of Plaintiff's hands and no objective evidence of localized tenderness or pain on palpitation of the joint or soft tissue. (R. at 345.) The PA

5

indicated that pain, weakness, fatigability, or incoordination did not significantly limit Plaintiff's functional ability with repeated use over a period of time. (R. at 347.) The PA nevertheless opined that Plaintiff's ability to work was impacted because his hands would become tired at times and his ability to grip, type, and do repetitive heavy lifting was limited to 20 minutes of continuous activity before he needed to stop and rest for 15 minutes. (*Id.*)

At office visits on February 14, 2018, and March 15, 2018, Dr. Lane wrote that Plaintiff had no cyanosis or edema in his extremities. (R. at 403, 400.)

In March of 2018, state agency expert Dr. Dimitri Teague reviewed Plaintiff's file and issued an administrative finding that Plaintiff was limited to occasionally lifting or carrying twenty pounds; frequently lifting or carrying ten pounds; unlimited pushing or pulling; occasionally reaching overhead bilaterally; and unlimited handling, fingering, or feeling. (R. at 66–67.) In June of 2018, state agency expert Dr. Linda Hall issued identical administrative findings except that she found that Plaintiff was also limited to occasional pushing or pulling and occasional handling. (R. at 83–85.)

In June of 2018, Plaintiff was examined by consultative examiner Dr. Ellen J. Offut. (R. at 427–435.) Plaintiff reported to Dr. Offut that although he had surgery for his carpel tunnel syndrome, he continued to have pain and no strength in his hand and that he had weakness grasping things and sometimes dropped things. (R. at 427.) Dr. Offut's manual muscle testing revealed that Plaintiff's manipulation, pinch, and fine coordination were normal bilaterally, but that his grip was abnormal. (R. at 432.) She indicated, however, that she did not consider the muscle testing reliable. (*Id.*) In addition, she wrote that Plaintiff's ability to pick up a coin, key,

6

or a watch, and his ability to open a jar, button/unbutton, zipper, or open a door was intact. (R. at 433.) Plaintiff's range of motion in his wrists, hands, and fingers were all normal. (R. at 434.) Nevertheless, Dr. Offut opined that she believed that Plaintiff's wrists "would prevent him from performing most manual labor jobs and some office jobs. He may not be able to type on a keyboard depending on the numbness and tingling in his hands when he does in the ergonomics of the design of the workstation [*sic*]." (R. at 431.)

Notes from the VA dated June 7, 2018, indicate that Plaintiff reported that his hands were sore since he had carpel tunnel surgery last year and that his pain in his hands was a 6 on a 10-point scale. (R. at 475.)

On September 28, 2018, Plaintiff saw Dr. Lane. (R. at 482–85.) At that time, he complained of hand pain. (R. at 482.) Plaintiff was prescribed Meloxicam. (*Id.*)

### III.   SUMMARY OF THE ADMINISTRATIVE DECISION

On December 17, 2018, the ALJ issued his decision denying Plaintiff's application for benefits. (R. at 12–29.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. (R. at 17.) At step one[3] of the sequential

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant

evaluation process, the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of December 31, 2017. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: carpal tunnel syndrome; bilateral osteoarthritis of the knees; degenerative disc disease of the cervical and lumbar spine; bilateral rotator cuff tendonitis; asthma; and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

>Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:
>
>After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the residual functional capacity to perform light . . . work as defined in 20 CFR 404.1567(b). Except the claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for four hours in an eight-hour workday; can occasionally use hand controls; can occasionally reach overhead; can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can occasionally stoop; cannot crouch other than what is required to transition from sitting to standing and vice versa; cannot kneel or crawl; can frequently handle and finger; can have occasional exposure to extreme heat and cold as well as excessive vibration; and must avoid concentrated pulmonary irritants such as fumes, odors, dust, and gasses and must avoid workplace hazards such as unprotected heights and machinery.

(R. at 19.) When devising this RFC, the ALJ determined that the prior administrative medical findings from Drs. Teague and Hall and were not persuasive because they were inconsistent with

---

>5. perform his or her past relevant work?
>5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and not supported by the record. (R. at 22.) The ALJ concluded that although both of these state agency experts found that Plaintiff could lift up to twenty pounds occasionally, the record evidence of Plaintiff's carpel tunnel syndrome instead supported a ten-pound lifting restriction. (*Id.*) The ALJ also concluded that the record did not demonstrate that Plaintiff's carpal tunnel syndrome symptoms were severe enough to support Dr. Hall's occasional handling limitation. (*Id.*) The ALJ also determined that the opinion from Dr. Offut was not persuasive because it was inconsistent with and not supported by the record. (*Id.*) Relevant to Plaintiff's claims, the ALJ explained that although Dr. Offut found that Plaintiff had severe grasping and pulling limitations, she also noted that his muscle testing was unreliable. (*Id.*)

At step four, the ALJ relied upon testimony from a vocational expert ("VE") to determine that Plaintiff was capable of performing his past relevant work as a recruiter because it did not require performance of work-related activities precluded by his RFC. (R. at 23.) Alternatively, at step five, the ALJ relied again on the VE's testimony and concluded that given Plaintiff's age, education, work experience, and RFC, he could perform other jobs that existed in significant numbers in the national economy such as a sorter, addresser, and table worker. (R. at 24.) Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. at 25.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff alleges that the ALJ committed reversible error when devising his RFC. Plaintiff contends that the ALJ's determination that he retained the ability to engage in frequent handling and fingering was not supported by substantial evidence because no medical expert opined that he was capable of frequent handling and fingering. The Court disagrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5). The regulations also define these categories. Objective medical evidence is defined as "medical signs, laboratory findings, or both." §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" and "prior administrative medical finding" are both defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

>    (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
>    (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
>    (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .
>
> . . . .
>
>    (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>       (i) The existence and severity of your impairment(s);
>
>       (ii) The existence and severity of your symptoms;
>
>       (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .
>
>       (v) . . . your residual functional capacity;
>
>       (vi) Whether your impairment(s) meets the duration requirement; and
>
>       (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

The governing regulations include a section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c (2017). It provides that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

12

prior administrative medical finding(s), including those from your medical sources." §§ 404.1520c(a); 416.920c(a). Instead, the regulation provides that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). The regulation explicitly indicates that the most important factors, however, are supportability and consistency. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulation requires an ALJ to "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision but allows that the ALJ, "may" but is "not required to, explain how [he] considered" the other factors. §§ 404.1520c(b)(2); 416.920c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources. §§ 404.1520c(d); 416.920c(d).

13

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because "the record does not contain a single opinion from any medical source that concludes that he is capable of frequent handling and fingering." Pl's Statement of Errors, ECF No. 24, at PAGE ID # 584. Nothing in the governing regulations indicates, however, that an RFC determination is substantially supported only if it is consistent with a medical opinion. The Sixth Circuit Court of Appeals has also explicitly rejected the argument that an RFC determination cannot be supported by substantial evidence unless it is consistent with a medical opinion. The Sixth Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x. 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July, 2, 1996). "[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 F. App'x at 728. *See also Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x. 435, 442–43 (6th Cir. 2017) (rejecting argument that 'the ALJ's [residual functional capacity] lacks substantial support because no physician opined that [the claimant] was capable of light work"). Plaintiff's assertion is, therefore, without merit.

Moreover, the ALJ's determination that Plaintiff was capable of frequent handling and fingering was supported by substantial evidence. The ALJ explained that the record evidence showed that Plaintiff underwent surgery for carpel tunnel syndrome after that condition had been demonstrated by EMG and nerve conduction testing and that he had subsequently presented to

14

medical providers with complaints of bilateral hand and wrist pain, numbness, and weakness. (R. at 20.) The ALJ noted, however, that although examinations showed that Plaintiff was positive for Tinel's Test and Phalen's Maneuvers, his examinations and X-rays were otherwise "unremarkable." (R. at 20–21.) Substantial evidence supports that conclusion. X-rays of Plaintiff's hands and wrists done on September 19, 2017, were "negative" and showed no findings of significant arthropathy. (R. at 248. 249, 251, 252.) The record also indicates that upon examination, Plaintiff's range of motion in his wrists, hands, and fingers were all normal. (R. at 434, 325–25, 422, 418, 415.) In addition, Plaintiff's wrists had no pain upon examination, with weight bearing, during passive range of motion testing, or with use of his hands, and he had no evidence of localized tenderness upon palpation. (R. at 325–26, 331, 345.) Plaintiff's flexion and extension strength in his wrists was also a 5/5 and he had no muscle atrophy. (R. at 327–28.) Plaintiff's wrist flexion, grip, and pinch strength were a 5/5. (R. at 335.) Plaintiff's sensation in his hands and fingers was normal. (R. at 336.) In addition, state agency expert Dr. Teague found that Plaintiff was capable of unlimited handling and fingering. (R. at 67.) The ALJ also accurately noted that Plaintiff had testified that that his carpel tunnel surgery had improved his tingling. (R. at 21, 42.) In short, the ALJ's determination that Plaintiff was capable of frequent handling and fingering was well supported even if other record evidence might support a contrary conclusion. *Blakeley*, 581 F.3d at 406.

Plaintiff also notes that the ALJ discounted the prior administrative finding from Dr. Hall, who found that Plaintiff was limited to occasional handling. Pl's. Statement of Errors, ECF No. 29, at PAGE ID # 584. The ALJ wrote that Dr. Hall's finding was not persuasive because it was inconsistent with and not supported by the record. (R. at 22.) The ALJ explained that

Plaintiff's "carpal tunnel syndrome symptoms and current objective findings are not severe enough to support an occasional handling limitation." (*Id*.) In support of this statement, the ALJ cited record evidence demonstrating that Plaintiff had normal sensation in his hands and fingers and that he had no tenderness, warmth, or objective synovitis in his wrists. (R. at 22, 336, 418.) The Court finds that the ALJ did not commit reversible error when considering Dr. Hall's prior administrative finding.

Similarly, Plaintiff notes that the ALJ discounted the medical opinion from Dr. Offut, who opined that Plaintiff had severe grasping and pulling limitations. Pl's. Statement of Errors, ECF No. 29, at PAGE ID # 584–85. The ALJ wrote that Dr. Offut's opinion was not persuasive because it was inconsistent with and not supported by the record. (R. at 22.) The ALJ explained that Dr. Offut had indicated that although Plaintiff's grasp was abnormal, the muscle testing that she performed was not reliable. (*Id*.) That is an accurate description of the information contained in Dr. Offut's manual muscle testing results. The ALJ did not commit reversible error when considering Dr. Offut's opinion.

Last, Plaintiff notes that the ALJ discounted the VA's assessment, which concluded that Plaintiff was disabled. Pl's. Statement of Errors, ECF No. 29, at PAGE ID # 584–85. The governing regulations provide, however, that certain evidence, including decisions made by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner "is inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c) (2017). The ALJ clearly considered medical records from the VA as

they are cited and discussed. The ALJ was not, however, required to explicitly analyze or discuss the VA's disability determination. Accordingly, the Court finds that the ALJ did not err with regard to the VA's assessment.

## VI. CONCLUSION

For all the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision and **OVERRULES** Plaintiff's Statement of Errors. The Clerk is **DIRECTED** to enter final judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**Date: September 23, 2020**  /s/ *Elizabeth A. Preston Deavers*
**Elizabeth A. Preston Deavers**
**Chief United States Magistrate Judge**